UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/12/09

------------------------------------------x
                                          :
AIOI INSURANCE CO.,                       :
                                          :
                      Plaintiff,          :        08 Civ. 1479 (TPG)
                                          :
          – against –                     :        **OPINION**
                                          :
TIMELY INTEGRATED, INC.,                  :
                                          :
                      Defendant.          :
                                          :
------------------------------------------x

        This case was brought by AIOI Insurance as the insurer and
subrogee of Yazaki North America.  AIOI claims that defendant Timely
Integrated should be held liable for damage occurring to a shipment of
Yazaki's goods.  Timely, however, asserts that it contracted with Lucky 7
Transportation for Lucky 7 to transport the goods, and that Timely is
therefore not liable to Yazaki.  Plaintiff now seeks partial summary
judgment as to liability.  Specifically, plaintiff seeks a holding that
(1) Timely is a "carrier" rather than a "broker" for the purpose of 49
U.S.C. § 13102, and may therefore be held liable under a federal law
known as the Carmack amendment, and (2) Timely is also liable under a
contract between Yazaki and Timely.

        Plaintiff's motion is granted with respect to Timely's liability
under the Carmack amendment, but denied with respect to Timely's
contractual liability.

## **Facts**

This action concerns a shipment of automotive parts picked up from a Yazaki facility in Nogales, Arizona on December 9, 2006 for transport to another Yazaki facility in Edwardsville, Illinois.  During this trip, the truck carrying the shipment was involved in an accident that caused the truck to overturn.  According to plaintiff, the contents of the shipment were damaged as a result of this accident.

The shipment in question was arranged under a contract between Timely and Yazaki called the "Motor Carrier Agreement" and dated October 1, 2005.  According to Timely, however, the shipment was actually picked up by a company called Lucky 7, which had separately contracted with Integrated Carrier Services, an affiliate of Timely, to provide transportation services.

As Yazaki's insurer, AIOI compensated Yazaki for the damage to its shipment.  AIOI now seeks recovery from Timely.  Timely, in turn, has impleaded Lucky 7 as a third-party defendant.

## **Discussion**

Summary judgment may be granted if "there is no genuine issue as to any material fact," such that the "movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In making this determination, the court must draw all justifiable inferences in favor of the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Applicability of the Carmack Amendment

A federal law known as the Carmack amendment imposes liability for "loss or damage" to a shipment. 49 U.S.C. § 14706(d). In order for a defendant to be held liable under this statute, a plaintiff must establish that the shipment was delivered to the defendant in good condition, that it was damaged when it arrived at its destination, and the amount of damages. Mo. Pac. Ry. Co. v. Elmore & Stahl, 377 U.S. 134, 137-38 (1964). Once a plaintiff makes this showing, the defendant may still avoid liability by demonstrating that it was not negligent and that the shipment was actually damaged because of "(a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods." Id.

In order for the Carmack amendment to be invoked, however, both the shipment and the defendant must be within the scope of the amendment. Rexroth Hydraudyne B.V. v. Ocean World Lines, Inc., 547 F.3d 351, 359-60 (2d Cir. 2008). Since the Carmack amendment imposes liability on "carriers" but not on "brokers," as those terms are defined by the statute, it is critical to determine whether a defendant was acting as a carrier or as a broker in relation to the particular shipment that was damaged.

Three statutory definitions are relevant to this determination. First, a "broker" is "a person, other than a motor carrier or an employee or agent of a motor carrier, that . . . sells, offers for sale, negotiates for, or

holds itself out . . . as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2). Second, a "motor carrier" is "a person providing commercial motor vehicle . . . transportation for compensation." Id. § 13102(14). Third, "transportation" is "services related to [the movement of property], including arranging for, receipt, delivery . . . , transfer in transit, . . . handling, . . . and interchange of . . . .property." Id. § 13102(23)(B).

The implementing regulation integrates these statutory definitions as follows. It defines a broker as "a person who, for compensation, arranges, or offers to arrange, the transportation of property by an authorized motor carrier." 49 C.F.R. § 371.2(a). However, motor carriers "are not brokers within the meaning of this section when they arrange or offer to arrange the transportation of shipments which they are authorized to transport and which they have accepted and legally bound themselves to transport." Id.

Plaintiff argues that Timely was acting as a carrier, rather than as a broker, and that it is therefore subject to the Carmack amendment. In support of this argument, plaintiff offers the following evidence. First, in the Motor Carrier Agreement, Timely, which the Agreement refers to as "Carrier," agreed to "provide transportation services for shipments tendered to Carrier by" Yazaki. Second, on the bill of lading issued by Timely for the December 2006 shipment at issue in this litigation, Timely was listed as the "Carrier" and "Delivering Carrier." Third, a Yazaki

employee states in an affidavit that Timely "held itself out to [Yazaki] . . . to be a motor carrier."

Timely does not dispute that it sometimes acts as a carrier. However, Timely asserts that with respect to the shipment at issue, it was acting as a broker, and had contracted with Lucky 7 to carry the shipment. Timely offers the following evidence in support of this position. First, counsel for Lucky 7 states in an affidavit that Integrated Carrier Services, an affiliate of Timely, contracted with Lucky 7 to transport the shipment, and that Lucky 7 did so. Second, a contract dated August 18, 2006 reflects an agreement between Lucky 7 and Integrated for Lucky 7 to transport shipments for a period of one year. Third, a form called a "load confirmation" reflects that Lucky 7 picked up a shipment at a Yazaki facility on December 9, 2006 and delivered it to another Yazaki facility. Fourth, a Timely employee states in an affidavit that Timely subcontracted the December 2006 shipment to Lucky 7, which picked up and transported the cargo.

Although each party disputes the relevance of the evidence produced by the other side, there is no genuine dispute as to the following facts. First, Lucky 7 is the entity that actually transported the December 2006 shipment, as evidenced by Lucky 7's admission to this effect. Second, Yazaki and Timely agreed in the Motor Carrier Agreement that Timely would provide "transportation services" for Yazaki's shipments. Third, Timely did not inform Yazaki that Lucky 7 (or any

- 5 -

entity other than Timely itself) would be transporting Yazaki's shipments under their agreement.

These facts establish that both Lucky 7 and Timely were carriers of the damaged shipment for purposes of the Carmack amendment. The classification of Timely as a carrier is required by the statutory language, the implementing regulation, and the purpose of the Carmack amendment. First, since 49 U.S.C. § 13102 defines a "motor carrier" as a person providing "transportation for compensation," and defines "transportation" to include "arranging for" the delivery of property, Timely is a "motor carrier" for purposes of the Carmack amendment. Timely argues that the Motor Carrier Agreement only required Timely to provide "transportation services," which could be interpreted as merely arranging for transportation by other entities. Even under this constrained reading of the contract, however, Timely was a carrier within the statutory definition since it "arrang[ed] for" the shipment of the Yazaki goods.

Second, Timely was not acting as a "broker" under the statutory definition. There is no evidence that Timely sold, offered, or held itself out to Yazaki as arranging for shipments by others as carriers. To the contrary, the evidence establishes that Timely was holding itself out to be the carrier of Yazaki's shipments. Indeed, both the Motor Carrier Agreement and the bill of lading for the damaged shipment refer to Timely as the "Carrier." Furthermore, even if Timely could otherwise be classified as a broker, it must be considered a carrier for purposes of this

shipment since it was authorized to transport the shipment itself and
had legally bound itself to transport the shipment. 49 C.F.R. § 371.2(a).

Finally, it would defeat the purpose of the Carmack amendment
to allow Timely to escape liability under these circumstances. The
Carmack amendment was addressed to situations where shipments were
passed from one carrier to another, often without the knowledge of the
shipper. Thus, the Carmack amendment was intended "to relieve
shippers of the difficult, and often impossible, task of determining" which
shipper caused damage to a shipment by instead holding the "initial
carrier" liable for damage caused by other shippers "whose duty it is to
forward the goods under the terms of the contract made by their
principal, the initial carrier." Mo., Kan., & Tex. Ry. Co. of Tex. v. Ward,
244 U.S. 383, 387 (1917). In this case, the evidence indicates that
Yazaki understood Timely to be transporting Yazaki's shipments itself,
and that this understanding was reasonably based on Timely's
representations.

The court therefore holds that Timely was a carrier of the
damaged shipment within the meaning of the Carmack amendment.

## Liability Under the Motor Carrier Agreement

Plaintiff also seeks a judgment that Timely is liable under the
terms of the Motor Carrier Agreement. That contract provides for Timely
to be held liable for certain damage occurring to Yazaki's shipments
while in the "possession and control" of Timely. Timely argues that this

provision does not apply to this shipment since the goods were actually

being transported by Lucky 7, and were not in Timely's possession or

under its control.  Plaintiff has not offered a response to this argument.

Therefore, it would be premature to grant judgment to plaintiff on the

issue of Timely's contractual liability.

## Conclusion

Plaintiff's motion for partial summary judgment is granted with

respect to Timely's liability under the Carmack amendment, but denied

with respect to Timely's contractual liability.

SO ORDERED.

Dated: New York, New York
August 12, 2009

Thomas P. Griesa
U.S.D.J.